Good morning. Our court is pleased to be sitting here in Pittsburgh today. I'm pleased to be joined here in this area by Judge Dick Nygaard from Erie and Judge Jane Roth from the state of Delaware. Welcome both of you to Pittsburgh. Thank you. It's a pleasure to be here. Our first case is Alcoa Inc v. United States of America. Good morning, Your Honors, Ms. Snyder. May it please the Court, Natalie Keller from Kirkland & Ellis on behalf of the appellant Alcoa Inc. With me today is my colleague, Brent Rogers. I would like to reserve five minutes for the rebuttal today. That request is granted. Thank you. Your Honors, I would like to make two key points today. First, that the purpose of Section 1341 of the Internal Revenue Code, which is the statute at issue in this case, is remedial and that the relief Alcoa seeks is entirely consistent with that remedial purpose. And second, that the district court's imposition of a requirement that Alcoa make a restoration of previously received income to a customer or related third party was reversible error. First, the purpose of Section 1341. The fundamental purpose underlying the statute is one of equity and fairness. It is founded on the simple principle that taxpayers should not pay taxes on income they didn't actually earn. This principle is sometimes distorted by the so-called Claim of Right Doctrine and the tax code's strict annual accounting concept. Under the Claim of Right Doctrine, a taxpayer must report all income to which he believes he is entitled. And the income here you are saying is affected by the cost of goods sold. Now, if the cost of goods sold had been greater because more had been spent on environmental remediation, wouldn't the price have been greater? I don't think so, Your Honor. Two responses. One is Alcoa is in the aluminum business and the prices for aluminum are set by the world commodities market. And second is that Alcoa never had the chance to increase its prices. And the question is whether it had the opportunity to go back and mitigate its losses by, for example, increasing prices or reducing expenses in other areas. And the fact is Alcoa never had that opportunity. And the same could be said of the so-called standard Section 1341 case, such as the case of an employee who receives, for example, a bonus that he is then required to return in a later year. In that case, the employee, had he known at the time that he received the bonus that he was going to have to return it, could have mitigated, or did not have the opportunity to mitigate his losses. Well, had Alcoa known at the time that it had to do this remediation, would it not have been done on specific pollutants by workers working at a wage rate that was, what was charged at that time? And if you're going to add to cost of goods sold for various years, don't you have to understand what the increased costs of those years would have been? The cost of labor, the cost of pollutants involved, the cumulative effect of pollutants. If you do preventive maintenance on your car and do a little bit every year, you are probably going to be saved a catastrophic repair bill at the end. The same thing with environmental remediation. If you do a little bit every year, you may be solved a catastrophic expense at the end. And how do we know that that is not the situation Alcoa would have faced? We have no understanding of what was, at least that I can see from the record, of the pollutants involved, of what should have been done, of the understanding of what should have been done, so that how can we imagine what the increased cost of goods sold for those particular years would have been if we don't understand what the situation was at that time? Your Honor, I think when the item included in gross income is the overstatement of gross income caused by the understatement of cost of goods sold, then the question is, how do you measure that item? And I think that's what you're asking. And I think the best way to measure that item is by reference to the environmental remediation expenses that were incurred in the later years. But those, if you are going to relate them back to expenses for a particular year, don't they have to be expenses that would have been incurred in that year realistically if it had been understood that they had to be incurred in that year? And there has been no such allocation made at all that I can see. But again, I think if you're looking at the – when the item is the overstatement of gross income caused by the understatement of cost of goods sold, then that item cannot necessarily be known until the later year when the taxpayer actually incurs the expense. And it is that expense that is incurred that then is directly related to the prior year's manufacturing activities and is directly allocable to those prior years. And I think, again, that the best measure of the item included in gross income when you're talking about an understatement of cost of goods sold is the actual expense incurred in the later years. Don't you run into a problem with your logic in trying to attribute this cost to a prior cost of goods sold? Don't you run into a problem under Section 1341 in that you then eliminate the fact that that expense is no longer an expense for the 1993 tax year, which is the tax year in which you're trying to seek the deduction? I don't think so, Your Honor. The question is whether a deduction is allowable in the current year. And the IRS has not challenged the deduction that Alcoa claimed in 1993. Yeah, but they allowed it because they said it was a legitimate ordinary business expense. Correct. But if your reinterpretation of how those costs should be allocated is accepted as an addition to the cost of goods sold from 1940 through 1987, doesn't that eliminate that item as an expense in 1993? No, I don't think it does because they incurred the expense in 1993 and they're clearly allowed a deduction in 1993. What we're saying is if the expense had been incurred in the prior period, it would have been included in cost of goods sold, and that is why we have an overstatement of gross income for the prior period. Now, these expenses were not incurred in the prior period, and that's why we're here. They were, in fact, included in 1993. So, again, I don't think our position is inconsistent at all. We're saying they are entitled to a deduction in 93, but had they incurred the expenses back in 1940 to 87, they would have been included in cost of goods sold in those years. To whom is the money being restored? We believe the money is being restored to the environmental contractors who are now doing the work. Now, this gets to the restoration argument. They didn't even exist back in 1943 or 1950. Right. I think the district court's focus on to whom the payment was made is incorrect. There's nothing in the statute that requires that the payment be made to a particular third party or to customers. All that the statute requires is that the payment in the current year result in a restoration of prior year's overstated gross income. And all that that requires is that if the payment is being made on account of or is attributable to an overstatement of gross income in the prior period, then that results in a restoration of gross income. There's absolutely nothing in the statute, the regulations, the case law that require that the restoration be made to a particular party. But restoration in and of itself, as it's defined, includes a meaning of giving back, to restore. And I think they did that. They restored overstated profits that they earned in the prior periods. Their income was overstated in prior years, and they're now restoring that by making a payment of environmental remediation expenses. Are we entitled to look at the title of the section to make a determination as to whether or not Congress intended it to be a restoration? I think you can look at the title, but the title cannot change the meaning of the statute. And again, we're not arguing that there is no restoration requirement. All that we're saying is that there is no requirement that that restoration be made to a particular third party. In this case, if the expense incurred in the later year is attributable to overstated gross income in the prior period, then you are making a restoration of that overstated gross income. Again, there's nothing in the statute, regulations, case law, legislative history that would suggest that this restoration payment needs to be made to a specific third party. Who is the another then looking at the treasury regulation requirement for their interpretation of restoration as restoration to another? Who is the another then? I think the another here, again, is the – there's two ways you could look at it. One is that the another are the environmental contractors who are being paid. The other way to look at it, as the amicus brief pointed out, is that CERCLA requires a restoration for the public good. There were – the environmental harm was caused to the public, and CERCLA requires the – Well, now, that's not an argument made below, right? That's in the amicus brief. But can we jump in and hear an argument before us that's not made to this report? I don't think we can. Well, I think you can consider that argument because it's just another way to look at what the restoration requirement is. It's like citing another case. I think here, again, the key point that we – It's like citing another case. Pardon me? I do not consider it like citing another case. I think, again, the key point is that the statute, regulations, case law, legislative history do not require that the restoration be made to a specific party. It only requires a restoration of overstated gross income. Here, the expense that was incurred in 1993 is on account of overstated gross income in the prior periods. That is a restoration of prior years' gross income. Thank you, Ms. Keller. We'll have you back for rebuttal. Thank you. Ms. Snyder? Good morning. Deborah Snyder on behalf of the United States. The issue in this case is whether ALCOA can use Section 1341 of the code to, in effect, recompute its tax liability for 47 prior years based on the cleanup costs that it incurred in 1993. When ALCOA incurred those costs in 1993, they deducted them as a business expense under Section 162 in that year, and that's not at issue here. At issue is the application of Section 1341 to those expenses. Section 1341 provides a limited exception to the claim of right doctrine, which, of course, is the doctrine that provides that a taxpayer who receives an item of income has to include it in his income in that year, even though he may be required to repay it later. That, of course, derives from the annual accounting principle, which says that tax is determined based on events occurring within the taxable year and without regard to events occurring in prior or subsequent years. What Section 1341 does is it provides a limited exception to those rules in some cases, and those cases are where the taxpayer is required to restore in a later year an item that was received in a prior year under a claim of right. To respond to ALCOA's argument that the purpose of Section 1341 is remedial and therefore should be construed broadly in favor of the taxpayer, that's actually not the case. Section 1341 provides for a deduction, and it's black-letter law that statutes providing for deductions are construed narrowly and are a matter of legislative grace, and the taxpayer has the burden of proving their entitlement to them. Fundamentally, ALCOA is not entitled to Section 1341 benefits for its cleanup costs because by paying those costs, it did not restore an item of income to another. That restoration requirement, of course, is explicit in the regulations, which are longstanding regulations, and in the title of the statute, as the court observed. There were regulations made in the course of litigation. No, the regulations, Section 1.1341-1, those regulations have actually been in effect since, I believe, 1957. But the environmental regulation. There's a revenue ruling that was issued later. It was issued, I believe, in 2004. But the regulations themselves that ruling was entitling, was interpreting, and that explicitly require restoration to another have been in effect for quite some time. The restoration requirement is also implicit in the statutory text of 1341 because it's implicit in the sort of deduction that the taxpayer is entitled to. The statute requires that the taxpayer included an item in gross income in a prior year and that it was established that the taxpayer did not have an unrestricted right to such item. The taxpayer gets a deduction for not having an unrestricted right to an item of income. The only way you can get a deduction for not having an unrestricted right to an item of income is if you pay it back. So without a restoration, there's no deduction that meets the terms of Section 1341. Alcoa argues that the district court erred because it required that the restoration be made to a customer or to a related third party. That's actually not what the district court held. Looking at the Reynolds opinion on page 702, which, of course, was adopted by the court below in this case, the court held Reynolds has not repaid any funds to anyone, and Reynolds cannot seriously argue that it is restoring its overstated income to any person or entity in the sense contemplated by Section 1341. So the district court held that Alcoa had not restored an item of income to any party, and that holding was, in fact, correct. What happened in 1993 was that Alcoa incurred an additional business expense. Congress changed the law. It required more stringent environmental standards, and Alcoa cleaned up in order to comply with those standards. Ms. Snyder, let me ask you a question in that area. Can you name me another area of the law that, you know, in the recent era that Congress has taken the step to say, okay, we had certain rules in place for disposal of waste byproducts in America, but now we're going to tell you that our rules really were insufficient. Regardless of what you did in the past, wherever you dispose of that waste, you're going to have to now go clean up the property where it's disposed. And, by the way, you're going to do it at your expense. Can you name me another area where Congress has taken that kind of a step in dealing with such a broad cross-section of the American business community? Well, I mean, there are other environmental statutes. Other than in the environmental area. Off the top of my head, no, but I don't. What about black loans, some of those? I mean, the payments, the compensation payments to workers for silicosis, pneumoconiosis developed in prior years that the mine owners now have to pay the medical bills, et cetera. I mean, it's an expense that suddenly drops down for past actions. Right, and I think that that would have the similar result as this case here. It's an obligation that arises as a result of a subsequent event. Something happens, there's a lawsuit brought, and the company incurs an additional expense. The fact that the expense related in some way to conduct that occurred in prior years doesn't mean that Section 1341 allows the taxpayer to recompute their tax. But can't it be argued that it relates to the language in Section A-2 that the taxpayer did not have an unrestricted right to send money? No. Here they thought they had the right to that gross income or that profit, and they find out in the late 80s and early 90s that they've got to go back and remediate how they dispose of their byproducts. Actually, they didn't find out that they did not have an unrestricted right to an item of income. Alcoa received its income from sales of its products to customers, and it never was determined that Alcoa did not have an unrestricted right to that item of income. So you don't agree that for discussion of the context of item of income, we should look at cost of goods sold? No, I don't. I think that that is completely speculative. The problem with that, as the district court observed, is that it requires the court to assume what Alcoa's gross income would have been in a prior year, and that's simply unknowable. As the court observed, the expenses weren't even the same. Cleanup costs are not the same as remediation costs. So, I mean, I think another issue is that the cost of goods sold argument is really a red herring because if, as the court observed, the expenses were cost of goods sold from the prior years, then they wouldn't be deductible in 1993. Alcoa argues that the IRS allowed the deduction, and that ends the issue, but it doesn't, because the IRS allowed the deduction in 1993 as a business expense under Section 162. They didn't allow a deduction because it was cost of goods sold, and, in fact, cost of goods sold would not provide a deduction. So, no, the government does not agree with that definition of an item included in income. Another problem with Alcoa's case is that, as the district court observed below, there has to be a nexus between the transaction that gave rise to the income in the first place and the subsequent obligation to restore it. So the courts interpreting that have uniformly held that the obligation to repay has to arise out of the same circumstances as the original payment, and that wasn't the case here either. Have we adopted that test? Has our circuit adopted that test? I think that this circuit adopted it implicitly in the Capple case, which I believe was from 1971, where the court observed in a footnote that the obligation to restore would have had to arise out of the taxpayer's role as a beneficiary rather than as a trustee. That was a case where certain payments were restored to a trust. So I believe in dictum this court has adopted that test, although that was not the basis for the holding in that case. The basis for the holding in that case was that there was no legal obligation to restore an item of income, which is exactly the case here. Alcoa was never obligated to restore any items of income that it had received in a prior year. I mean, the way Section 1341 works is actually relatively simple. The claim of right doctrine requires a taxpayer to take into account money received. The taxpayer has to pay it back later, and the deduction doesn't make him whole. None of that has anything to do with additional expenses that are incurred in later years, and that's what happened here. Alcoa incurred additional expenses in 1993. Does the court have any further questions? We thank you, Ms. Snyder. And the government will rely on our brief for the inventory exception. Do you believe we need to reach the inventory exception? I don't believe the court needs to reach the inventory exception, and, in fact, the district court in this case did not. The district court observed that the taxpayer was taking an inconsistent position but did not. What did the district court in Reynolds do? The district court in Reynolds observed, I'm sorry, observed that the taxpayer was taking an inconsistent position. Right, that's what I thought. Because, on the one hand, the taxpayer was saying the costs were costs of goods sold or inventoryable costs, but, on the other hand, were saying that the exception did not apply. And there are arguments for why the taxpayer's restrictive definition of that exception is wrong. So you think Reynolds, at least what it inferred, was wrong on the inventory exception? No, I believe what Reynolds inferred was correct and that the taxpayer's position was wrong. You believe the inventory exception, if it was an issue here, does apply? Yes. I believe that if this court were to hold, although, of course, we believe it shouldn't, that there was a restoration within the terms of Section 1341A, that the inventory exception would bar 1341 relief for that restoration. But their position is we don't need to reach it. That's right. Thank you. Ms. Keller? I'd like to address just a couple of the points that we hit on in the main argument. Starting off with the restoration argument, the term restoration is frequently used as a shorthand for the statutory requirements, in particular Section 1341A-2, which says that it must be established after the end of the prior year that the taxpayer did not, in fact, have an unrestricted right to that income. We think that is clear here. By virtue of incurring the environmental remediation expenses in the subsequent years, it was established that Alcoa did not have a right to its overstated gross income in the prior years. Now, the regulations that Judge Nygaard pointed out do use the term restoration to another, but they then go on to define restoration to another as simply parroting the statute that I just mentioned. It says restoration to another means a restoration resulting, because it was established after the close of the year, that the taxpayer did not have an unrestricted right to the income. Again, we don't think the restoration requirement focuses on to whom the payment was made. It just is shorthand for the second requirement in the statute, and we think that requirement is clearly met here. As mentioned in our legislative history, or as mentioned in our brief, the legislative history further supports that argument. The legislative history indicates that 1341 was intended to apply to cases of transferee liability and specifically cites the Aerosmith case. In that case, the taxpayers received their income from a corporation which liquidated and then repaid the income to a creditor that was not at all connected with the original payment of the item to the taxpayers. Again, the focus should not be on to whom the payment is made. It should simply be on whether the payment is attributable to an overstatement of gross income in the prior periods. Second, I'd like to follow up on the amount of the item that Judge Roth mentioned earlier, this issue of whether the environmental remediation expenses are an appropriate proxy for the understatement of cost of goods sold in the prior periods. And as I mentioned, I think that is the right way to look at it because ALCOA did, in fact, incur the environmental remediation expenses in 1993, and those expenses are properly allocable or attributable to manufacturing activities in the prior period. However, if this court feels that an analysis needs to be done as to some sort of discounting to take those expenses back to the prior period, then that's a factual issue for the district court. It does not mean that ALCOA is not entitled to relief. Instead, the legal argument should be reached that Section 1341 applies, and then there should be a factual issue for the district court as to what the extent of the understatement of cost of goods sold was in the prior period. Third, I want to mention the same circumstances test. Judge Fischer asked whether this circuit has adopted that test, and I believe they have not, and they should not do so. Again, it's a test that is not found anywhere in the statute or the regulations. Council mentioned that the Capel case in the Third Circuit may have adopted that test, and I don't think they did. The issue in Capel was whether a voluntary payment is sufficient to meet the establishment requirement. And in Capel, what the court said is that if the taxpayer voluntarily returns an item of income, then that does not meet the establishment requirement. Instead, the taxpayer must be obligated or legally obligated to make that return of income. And then last, I just want to hit on one other point, and that's whether the statute is remedial. Council mentioned that because it provides for a deduction, it is not remedial and should be construed narrowly, and I disagree with that. I think it's clear under the law that Section 1341 does not provide for a deduction. Instead, the cases all say that the taxpayer must be entitled to a deduction independent of Section 1341, and once you're entitled to that deduction, then Section 1341 comes in and says, how should you treat it? And I think that point is that Section 1341 is remedial. It doesn't entitle the taxpayer to a deduction. It just says, how should the deduction be treated once the taxpayer is entitled? Costs sold are not a deduction. The expense of creating the goods is not a deduction in the tax. It's a factor that comes into computing gross income. That's correct. And the question – I think what Council was saying is that Section 1341 entitles the taxpayer to deduction, which is not correct. The taxpayer must be entitled to a deduction outside of – is not initially a deduction. It's a factor in the computation of gross income. Once that's arrived at, then there are various deductions that are applied. Again, I think in the current year, there's no question that ALCOA is entitled to a deduction in 1993 for the environmental remediation expenses. So that's the deduction. The question then is, how do you treat that deduction? 1341 then comes in to say, if it would have been incurred in the earlier years, it would have been cost of goods sold. I see my time is up. We respectfully request that this Court reverse the District Court and remand for further proceedings. Thank you, Ms. Keller. And we thank both Council for excellent arguments, and we'll take the case under advisement.